THE UNION PACIFIC RAILWAY COMPANY v. JOHN MOTZNER.

No. 33.

FIRE FROM RAILROAD—*Instructions to Jury.* In an action against a railway company for damages alleged to have been caused by the escape of fire from its engine, through the negligence of the defendant in the management of the train, and the failure to employ suitable means to prevent the escape of fire from the engine, it is error for the court to refuse an instruction to the jury to the effect that a recovery could not be had if the engine in question was of an approved construction, and at the time the fire was alleged to have escaped therefrom was in good condition, and handled in a competent, careful and skilful manner.

·MEMORANDUM.—Error from Russell district court; W. G. EASTLAND, judge. Action for damages on ac-

count of fire by John Motzner against The Union Pacific Railway Company. Judgment for plaintiff. Defendant brings the case to this court. Reversed. The opinion herein, filed February 14, 1896, states the material facts.

*A. L. Williams, N. H. Loomis,* and *R. W. Blair,* for plaintiff in error.

*Geo. W. Holland,* and *W. B. Sutton,* for defendant in error.

The opinion of the court was delivered by

CLARK, J. :  This action was brought by John Motzner against The Union Pacific Railway Company to recover damages alleged to have been sustained by him through the negligent operation of the defendant's railroad.  The particular negligence complained of is that the defendant, while running one of its trains on its road in Russell county, managed its train carelessly and negligently, and failed to employ suitable means to prevent the escape of fire from the engine that was used in running the train, and carelessly and negligently permitted dead and dry grass and other combustible material to accumulate and remain on its right of way and land near its railroad-track, and that by reason of said carelessness and negligence fire escaped from the engine and ignited the said dry and dead grass and other combustible material, and that by reason of a continuous body of dry grass and other combustible material the fire was communicated to plaintiff's premises, where it destroyed certain property belonging to him.  Judgment was also asked for a reasonable attorney's fee for prosecuting the action.  The jury returned a general verdict in favor of the plaintiff for $603.25 dam-

ages, and for a $150 attorney fee. The jury also made certain special findings of fact, as requested by the parties to the action. The defendant in due time filed its motion for judgment in its favor upon the special findings, and for a new trial, both of which were overruled by the court, and judgment was entered in favor of the plaintiff for $753.25, and costs of suit. The defendant duly excepted to the rulings of the court on its motion for judgment in its favor upon the special findings, and on its motion for a new trial, and to the rendition of the judgment in favor of plaintiff, and has brought the case to this court for review.

Under the statutes of this state, when the plaintiff has established the fact that the fire complained of resulted from the operation of the railroad, a *prima facie* case of negligence on the part of the railway company is also established. The railroad company, however, insists that the plaintiff failed to establish the fact that the fire which destroyed his property was caused by the defendant in operating its railroad. The evidence on this point is not very satisfactory, yet as there was some legal evidence tending to establish that fact, and the trial court having approved a finding of the jury that the fire which burned plaintiff's property was set by a locomotive being operated and managed by the defendant, this court is bound by such finding.

The jury returned special findings of fact, in answer to questions submitted by the defendant, as follows:

"1. Was the fire which burned plaintiff's property communicated from one of defendant's engines? Ans. Yes.

"2. If so, what was the number of the engine? A. 742.

"3. Who was the engineer? A. Thomas Mills.

"4. Was such engineer a careful, competent and skilful engineer? A. Yes, but not careful.

"5. Was such engine, at the time the fire was alleged to have escaped, handled in a competent, careful and skilful manner? A. No.

"6. Was such engine of an approved pattern and approved construction? A. Yes.

"7. What appliances were used upon such engines to prevent the escape of sparks? A. An extension end.

"8. Was such engine supplied with approved appliances to prevent the escape of sparks? A. Not fully.

"9. Was such engine examined with reference to its appliances to prevent the escape of sparks immediately before it started out on the trip upon which the fire is alleged to have escaped? A. Yes.

"10. Was such engine examined in reference to its appliances to prevent the escape of sparks immediately after its return from the trip on which the fire is alleged to have escaped? A. Yes.

"11. Upon the several examinations, in what condition was the engine found? A. Good.

"12. Was not the netting of this engine ash-pan carefully examined by a competent inspector and found to be in good condition immediately before it started out on said trip? A. Yes.

"13. Was not the netting in the extension front end of such engine examined and found to be in good condition by a competent inspector immediately before starting out on such trip? A. Yes.

"14. Was not the netting of said ash-pan of said engine carefully examined by a competent inspector and found to be in good condition immediately after such trip? A. Yes.

"15. Was not the netting on the extension front end and ash-pan of such engine carefully examined by a competent inspector and found to be in good condition immediately after returning from such trip? A. No."

"23. Would a wire screen over the front damper of the ash-pan have interfered with the draft necessary to make steam? A. No."

The evidence all tends to show that the engine was in good condition and supplied with approved appliances to prevent the escape of sparks, and that when an engine is so supplied it is impossible even by careful management absolutely to prevent their escape; yet the jury, by finding No. 8, say that the engine was defective in not being fully supplied with approved appliances, while in their answers to special interrogatories 9, 10 and 11 they clearly contradict that finding.

The assistant superintendent of motive power and machinery of the Union Pacific system, of many years' experience in such matters, testified that a screen damper in the front end of the ash-pan of the engine would have been no protection against the escape of fire, as no fire could have escaped through that opening when the train was running with the wind; and the foreman of the roundhouse at Junction City, who had been a locomotive engineer for nine years, in answering the question as to what would be the effect upon the practical workings of an engine if it was supplied with a netting damper on the front end of its ash-pan, testified that the effect would be bad, assigning as a reason therefor, that "as a netting damper on the front end of the ash-pan would be almost under and a little back of the eccentric, more or less oil would drip from the eccentric, and this with the dust that would accumulate would clog the netting, making it impossible to get a draft sufficient to make steam."

This testimony was uncontradicted; yet the jury specially found, in answer to questions submitted by the plaintiff, that a screen damper in the front end of the ash-pan would have afforded better protection against the escape of fire, and that such appliance

would not have interfered with the draft necessary to make steam. The inspector testified that, after the engine returned from the trip on which the fire was alleged to have escaped, he examined the netting in the extension front end of the engine, by inserting a light at the end of a long rod, through an opening eight inches in diameter in the side of the extension, and that by so doing he could and did see its exact condition; that it was in good order, and that it required about a half hour's time to make such an examination. This evidence was undisputed; yet the jury, by special finding number 15, say that no careful examination was made at the time.

The jury found in answer to questions submitted by the plaintiff below as follows:

"2. Was the right of way of the defendant, at the place where the fire started, clear of dry and dead leaves and grass liable to be ignited by sparks or cinders from its engine?  A. Yes.

"3. Did the fire which injured the plaintiff originate on the defendant's right of way?  A. Yes.

"4. Did the defendant carelessly and negligently allow dead and dry and combustible grass and weeds to accumulate on its right of way liable to be ignited by sparks and cinders from defendant's engines?  A. Yes.

"5. Had the defendant kept its right of way clear of dead and dry and combustible material, grass, and weeds, would the fire that destroyed plaintiff's property have been started?  A. No."

It will be observed that these findings are likewise conflicting. The jury also found that the engine was not handled in a competent, careful and skilful manner at the time the fire was alleged to have escaped. There is nothing, either in the findings or in the evidence, to indicate in what manner the employees of the road were negligent in the handling of the engine;

nor is there anything in the record, aside from the findings of the jury, tending in any manner to discredit the testimony of the engineer and fireman that the engine was properly managed ; nor do counsel for the defendant in error offer any suggestion as to what was done or could have been done by those in charge of the train, or as to what they failed to do which they should have done, from which negligence might, under the evidence, reasonably be imputed to them, except that there was no showing as to the particular kind of fuel that was used, or that it was negligence to run the train at a speed of from 25 to 30 miles an hour.   There is no evidence that any other fires were set by this engine, or that any other fire was ever caused by any engine when managed by those in charge of this train.   No witness testified that he knew of any fire ever having escaped from this engine, either on this or any other occasion.   While the evidence shows that the engine used on this occasion emitted a great volume of smoke, there was no direct evidence that any fire escaped, and the engineer testified that the unusual amount of smoke escaping from the engine was probably caused by the fireman throwing in coal or poking the fire.   The uncontradicted evidence is that no more fire or sparks could be forced from the engine during that operation than would ordinarily have escaped when the fireman was not so engaged.   In view of the fact that the jury made inconsistent findings as to the condition of the engine and its appliances, and also as to the condition of the right of way, we think it is fair to presume that they did not duly consider the evidence submitted by the defendant tending to rebut the statutory presumption of negligence in the management of the train.

Among other instructions which the defendant requested the court to give to the jury is the following :

"The jury are instructed that the defendant railway company is not liable for fire occasioned by sparks when the engine is of an improved construction, and in good condition, and handled by a competent, careful and skilful engineer, and at the time the alleged fire escaped the engine was handled in a competent, careful and skilful manner."

The court refused to give this instruction, and an exception was duly saved to the ruling of the court. We think the court erred in this ruling. It must be borne in mind that the petition in this case does not allege generally that the injuries complained of were caused by the defendant "in the operation of its railroad." Under such a general allegation and proof in support thereof, it would probably be necessary, under the decisions of our supreme court, for the defendant to show that it was not negligent in permitting combustible material to accumulate on its right of way liable to be ignited by fire accidentally escaping from a passing engine. Under the petition in this case; the plaintiff could only recover for injuries resulting from a fire negligently caused by the defendant either in the management of the train or by failure to employ suitable means to prevent the escape of fire from the engine. (*A. T. & S. F. Rld. Co. v. Ayers*, 56 Kan. 176, 42 Pac. Rep. 722.) The court virtually instructed the jury to find for the plaintiff, if they should find and believe from the evidence that fire escaped from the engine through no fault of the defendant or those in charge of the train, and ignited combustible material which the defendant had carelessly and negligently allowed to accumulate and remain on the right of way liable to be so ignited. This instruction is

clearly erroneous. There is nothing in the findings or evidence to indicate whether the fire was purely accidental or whether it was caused by the negligence of the defendant, either in the use of a defective engine or its appliances, or in the management of the train, as alleged in the petition ; and for aught that appears in the record, the jury may have based their general verdict solely upon the defendant's negligence in the care of its right-of-way, and under their finding that the defendant was negligent in this respect they would have been justified, under this instruction, in returning a general verdict in favor of the plaintiff for damages sustained by him as a result of fire escaping from the engine through no fault of the defendant.

The evidence in support of plaintiff's claim for damages is unsatisfactory, particularly so with reference to the value of the pasture, the straw, and some of the items of household furniture and wearing apparel. It also might be said that the court erred in some of its instructions to the jury other than the one pointed out, yet these errors are not sufficient in and of themselves to require a reversal of the judgment. The jury have passed upon the weight of the evidence, and no proper exceptions have been saved to the general instructions of the court, still, we think it is proper to take these matters into consideration in passing upon the other assignments of error, even though the court might otherwise be in doubt as to whether or not the judgment should be disturbed.

After a fruitless attempt to harmonize the various conflicting findings of the jury, and to place such a construction thereon as would warrant us in saying that they are consistent with the general verdict, and in view of the errors of the court both in giving and

refusing instructions as indicated herein, and its error in the admission and rejection of evidence offered not herein particularly pointed out, as they will probably not occur upon a retrial of the case, we can reach no other conclusion than that another jury should pass upon the matters of fact in controversy between the parties, and the judgment will therefore be reversed and a new trial awarded.

All the Judges concurring.